UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD L. FINLEY, JR.,

        Plaintiff,                         Case No. 2:17-cv-5

v.                                        Honorable Gordon J. Quist

RICHARD D. RUSSELL et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

### **Factual Allegations**

Plaintiff, Edward L. Finley, Jr., presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Maximum Correctional Facility (AMF), though

the actions about which he complains occurred while he was housed at the Marquette Branch Prison (MBP) and the Kinross Correctional Facility (KCF). He sues MDOC Hearing Administrator Richard D. Russell; MDOC Hearing Officer Thomas O. Mohrman; MBP Hearing Investigator R. Mohr; MBP Sergeant (unknown) James; KCF Lieutenant (unknown) Maki; KCF Correctional Officer (unknown) Zimmerman; MBP Deputy Warden Erica Huss; MBP Resident Unit Manager D. Viitala; MBP Prison Counselor and SCC (Security Classification Committee) Member R. Horrocks; and MBP SCC Member Mark H___ (Unknown Party).

According to the complaint, on September 10, 2016, at 9:00 a.m., as part of a nationwide protest, a large group of prisoners at KCF walked or marched around the small prison yard at KCF. At about 9:05 a.m., the control center announced that the yard was closed and all prisoners were to return to their units. Shortly thereafter the siren sounded.

Plaintiff alleges that he watched the proceedings from his bunk window, as prisoners continued to walk in the yard and the crowd grew larger and larger. According to Plaintiff, at about 10:00 a.m., he was on the unit base, where he saw Defendants Zimmerman and Butler watching the prisoners in the yard. A minute or two later, the siren sounded again. No count was performed after the second siren. Prisoners started leaving the unit, and neither Zimmerman nor Butler stopped them. Plaintiff states, "Once I saw that control of the facility was forfeited, I went outside and walked around the small yard so I would not get hurt, it was close to 11:00 a.m." (Compl., ECF No. 1, PageID.5.) Plaintiff listened to Deputy Warden Terry Harwood speak with the block representatives in front of the control unit.

Plaintiff denies ever encouraging, advocating, or instigating actions intended to seriously endanger the physical safety of the facility, persons, or property. However, before all prisoners left the yard, a young African-American prisoner was stabbed because he would not come

outside and instead stood by the officers, who were recording on their phones which prisoners were walking. All prisoners eventually returned to their housing units and a count was taken. Prisoners waited in their cubes for count to clear, when, all of a sudden, all unit officers took off toward the control center. The emergency response team (ERT) came out of the surrounding units with their guns drawn. While one ERT team was at A-wing, taking prisoners out of their cells and cuffing them, other ERT teams surrounded other units. While an ERT team was outside H-Unit, the unit was damaged.[1] When the ERT team came into H-Unit, it gassed all prisoners without warning. Prisoners were then taken out of their units, cuffed, taken to the kitchen, and strip searched in front of other prisoners and male and female guards.

Plaintiff was transferred to MBP, custody level V, on September 11, 2016, at approximately 3:00 a.m. Plaintiff alleges that he did not receive a ticket at that time and was never reviewed on a ticket. He also was not given notice of his higher custody level or classification to administrative segregation on the major misconduct ticket. On the morning of September 12, Plaintiff received a ticket for inciting to riot or strike or rioting or striking, which was written by Defendant Maki at KCF. Plaintiff promptly sent a kite to the MBP inspector, indicating that he had not been reviewed on the ticket. Also that day, Defendant Mohr gave Plaintiff a "Resident's personal statement and Account of Charge(s)" form to complete, and Mohr later returned to pick it up. (*Id.*, PageID.7.) Plaintiff alleges that Mohr never interviewed Plaintiff and never provided him a copy of the investigation report. Plaintiff complains that Defendant Maki did not properly write the ticket and that Defendant James failed to review the ticket with Plaintiff.

---

[1] The Court notes that at least some news reports about the incident indicate that inmates became violent, started a fire, smashed sinks and trashed their housing units, allegedly rendering two units unlivable. *See* Paul Egan, *Inmates in Upper Peninsula Set Fire, Damaging Housing Units*, DETROIT FREE PRESS, Sept. 11, 2016, http://www.freep.com/story/news/local/michigan/2016/09/11/kinross-correctional-facility-upper-peninsula/90222314/. The Court need not and does not make any determination of the accuracy of the account given by Plaintiff or the news reports.

On September 13, Plaintiff wrote a grievance against Defendant James, alleging the falsification of information and documents, because James falsely stated that Plaintiff had reviewed the ticket. In his "resident's statement," Plaintiff requested that the hearing officer call Defendants Maki, James and Zimmerman, and he asked that a number of documents be provided that he claimed were relevant to his guilt or innocence. At the hearing on September 18, however, Defendant Mohrman failed to call any of Plaintiff's witnesses, saying that no further witnesses were necessary, in light of the other evidence in the record. On September 20, 2016, Plaintiff received Defendant Mohrman's misconduct finding, which Plaintiff complains lacks a citation to evidence or a basis for the finding. Mohrman sentenced Plaintiff to 30 days' loss of privileges. Plaintiff kited Defendant Mohrman that day, requesting his hearing packet.

On September 21, 2016, Plaintiff received a separate form indicating that he had been classified to administrative segregation. He complains that Defendants Huss, Viitala, Horrocks, and Unknown Party failed to give him proper notice of reclassification and that no hearing was conducted by an administrative law judge. Defendant Huss told Plaintiff that the reclassification was made pending investigation of whether Plaintiff had committed any felony in relation to the destruction at KCF. Plaintiff sent a kite to Defendant Huss on September 27 and provided her time to respond to his claim about the failure to provide notice. Also on September 27, Plaintiff wrote a grievance on Defendant Mohr for dereliction of duty. Plaintiff received his copy of the hearing packet on September 28. Plaintiff filed a request for rehearing with Defendant Russell on September 28, and on November 23, 2016, Defendant Russell denied the appeal. On October 7, 2016, Plaintiff was transferred to AMF and placed in Level V administrative segregation.

Plaintiff complains that Defendants denied him due process in charging him, investigating him, and finding him guilty of the misconduct ticket. He also alleges that Defendants

denied him due process in the reclassification process. He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that the major misconduct charges against him were "false" and that he did not receive due process during the charging, investigation and hearing portions of the misconduct procedures. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Thirty days' loss of privileges falls far short of an atypical or significant hardship. Plaintiff's due process claim based on the

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

procedures surrounding the misconduct ticket therefore fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Moreover, the Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Further, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process

or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim based on the change to his security classification.

Also pending is Plaintiff's motion to stay the proceedings pending completion of some additional administrative remedies (ECF No. 6). Because his claims lack merit, Plaintiff's motion to stay will not alter the analysis. It therefore will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  March 17, 2017                             /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE